NEWARK EXPRESS AND TRANSPORTATION COMPANY, APPELLANT, v. DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY, APPELLEE.

Argued November 3, 1915—Decided August 9, 1916.

1. The federal "River and Harbor act" (*U. S. Comp. Stat.* 1901, *p.* 3540) is silent on the subject of closing bridges over navigable streams for the purpose of repairing, and has not superseded the statutes of this state in that regard.

2. The act of 1892 (*Pamph. L.*, *p.* 435), amending the act respecting bridges, authorizes the obstruction of navigation over navigable streams made necessary by repairs to any bridge or viaduct over the same, and expressly exempts any corporation or person so repairing such bridge or viaduct from liability for damages occasioned by obstructing or stopping navigation thereby, provided such repairs and obstructing be done between February 1st and February 20th.

3. The supplement to the act respecting bridges, enacted in 1896 (*Pamph. L., p.* 250), which fixes the time within which needed repairs, &c., may be lawfully made between November 1st and January 1st, contains a proviso that the act shall not apply to any navigable river or water where the depth where any bridge is erected exceeds four feet six inches at mean high tide. *Held,* that the act of 1896 does not cover the entire subject legislated upon by the act of 1892 (*Pamph. L., p.* 435), and as both statutes are in *pari materia,* the passage of the act of 1896, although it contained a general repealer of all acts inconsistent therewith, did not repeal the act of 1892.

On appeal from the First District Court of Newark.

Before Justices PARKER, MINTURN .and KALISCH.

For the appellant, *J. Harry Hull.*

For the appellee, *Walter J. Larrabee.*

The opinion of the court was delivered by

KALISCH, J.    The appellant, the plaintiff below, was engaged in the transportation of freight by boats on the Passaic river.    It brought its action against the railroad company, the defendant below, for damages based upon the allegations that the railroad company, which maintained a railroad bridge with a draw across the Passaic, closed the drawbridge to navigation for three days, so that certain of the appellant's boats were prevented from passing beyond the bridge, and that in consequence thereof the appellant was unable to move freight up and down the river, &c.

It was stipulated between the parties that the depth of the river where the bridge is erected exceeds four feet and six inches at mean high tide; that the railroad company closed the drawbridge for a portion of three days in the year of 1913, namely, on the 12th, 13th and 14th of February; that the drawbridge was closed on the days in question for the purpose of enabling the railroad company to make necessary repairs; that such repairs could not be made without closing the drawbridge; that notice was given and published in the

Newark Evening News, a newspaper circulating in Essex county, and the Jersey City Evening Journal, a newspaper circulating in Hudson county, in this state, on the 11th, 18th and 25th days of January, 1913, of the intention of the railroad company to make the necessary repairs between February 10th and 19th, 1913; that the drawbridge was a lawfully existing structure prior to the passage of the act .of congress, approved March 3d, 1899 (30 *Stat.*, *p.* 1151; *U. S. Comp. Stat.* 1901, *p.* 3540), known as the "River and Harbor act;" that the railroad company did not obtain from the secretary of war of the United States and did not apply to him for permission to close the drawbridge; that when application is made to the war department of the United States for permission to close drawbridges over navigable waters under the jurisdiction of the United States for repairs, the invariable reply is that there is no law of the United States that empowers the secretary of war to authorize the closing of a bridge to navigation while repairs are being made, but recognizing the fact that repairs are necessary, it has been the practice of the war department to notify the owners and operators of bridges, when application is made for permission to close them for repairs, that no action will be taken against them for obstructing navigation during the reasonable time necessary for doing the work, it being understood that the parties thus closing the bridges may be responsible in damages for any injury inflicted upon private interests by such acts.

There was also admitted in evidence, by consent of the parties, a copy of section 5 of the act of congress approved August 18th, 1894, known as the "River and Harbor act," and the amended rules and regulations to govern the opening and closing of drawbridges across Newark bay, Passaic and Hackensack rivers, and their navigable tributaries, and it was stipulated that the rules and regulations were in effect on the 12th, 13th and 14th days of February, 1913.

Upon examination of the Harbor act, we find that it imposes a penalty upon every person who shall willfully fail or refuse to open or cause to be opened the draw of a bridge

across navigable waters of the United States for the passage of a boat or boats, &c., and also points out a procedure for the enforcement of the act in the federal tribunal.

We are unable to perceive any application of this act to the facts of the present case. Nor do we think that the rules and regulations promulgated by the secretary of war have any pertinency to the issue before the court. The rules concern the management of the drawbridge in its relation to the passing of trains carrying the United States mail and of vessels navigating the stream and to general traffic over the bridge, but are silent as to obstructions caused for the purpose of making necessary repairs.

Upon the stipulated facts and on testimony taken in addition thereto the trial judge found that the railroad company had complied with the statutes of this state and performed the work of repair without unreasonable delay, and that therefore the appellant was not entitled to recover any damages, and thereupon gave judgment in favor of the defendant.

It is conceded that the railroad company closed the draw to make the necessary repairs in compliance with the act of 1892 (*Pamph. L., p.* 435), which is entitled "An act to amend an act entitled 'A further supplement to an act entitled "An act respecting bridges," ' " approved April 10th, 1846; approved March 24th, 1874; approved April 3d, 1891, and which reads as follows: "That whenever it shall be necessary to repair or rebuild any bridge or viaduct in this state over any navigable river or water, the public authorities, corporation or person so repairing or rebuilding such bridge or viaduct, shall not be liable for damages occasioned by obstructing or stopping navigation thereby; *provided,* the said repairs or rebuilding and obstructing or stopping of navigation be done between the first day of February and the twentieth day of February; *and provided further,* that said repairs or rebuilding be prosecuted with all practical dispatch; *and provided further,* that notice of such intended repairs or rebuilding be given at least three weeks prior to commencing the same by publishing a notice thereof in some

newspaper circulating in the county adjacent to such bridge or viaduct."

No such provision is found in the Revision of 1846, and its first appearance is made in the act of 1874 (*Pamph. L., p.* 90), which is entitled "A further supplement to an act entitled 'An act respecting bridges,' approved April 10th, 1846." During the period intervening between the years 1874 and 1892, the legislature caused several changes to be made in the provision of the act of 1874, but these changes related to the time when and within which repairs, &c., to bridges could be lawfully made, and expressly excepted Monmouth county from the operation of the act of 1874. In the act of 1874, the lawful period fixed by the legislature, during and within which repairs, &c., could be made, was between the 1st day of January and the 1st day of March. Then followed the act of 1891 (*Pamph. L., p.* 312), which is entitled "An act to amend an act entitled 'A further supplement to an act entitled "An act respecting bridges," approved April 10th, 1846; approved March 24th, 1874.'" This act appears to be in the same language as that of the act of 1874, with this exception, that it changed and limited the lawful period prescribed by the act of 1874 in which repairs, &c., could be done to days between January 15th and February 15th. In all other respects the two acts referred to are the same.

A comparison of the context of the act of 1892 with the acts of 1874 and 1891 will show that one of the purposes intended to be accomplished was to change and shorten the period of time at and within which needed repairs, &c., could be made on bridges over navigable streams, as fixed by the act of 1891, and to limit the time for the making of such repairs, &c., to the days between February 1st and February 20th. It is to be observed, however, that there is no exception of Monmouth county from the operation of the act as in the acts of 1874 and 1891, and that the act contains an express clause repealing all acts or parts of acts inconsistent therewith.

But in 1896 the legislature (*Pamph L., p.* 250) enacted a law entitled "A supplement to an act entitled 'An act re-

specting bridges,' approved March 24th, 1874," which differs from the acts above mentioned in the following respects: It fixes the time at and within which needed repairs, &c., may be lawfully made under its provision between the 1st day of November and the 1st day of January, and adds the proviso, "that this act shall not apply to any navigable river or water where the depth of water of said river or water in the channel thereof where any bridge is now erected exceeds four feet six inches at mean high tide," and also contains a general repealer of all acts or parts of acts inconsistent therewith.

Counsel for appellant contends that the act of 1892 did not legally warrant the railroad company to close the draw for needed repairs for two reasons—*first,* that the River and Harbor act, and the rules and regulations adopted by the secretary of war regarding navigable waters have superseded the act of 1892, and since congress may legislate to the exclusion of New Jersey respecting drawbridges over the navigable waters of that state, the act of 1892 has become a nullity; *secondly,* that the act of 1892 was superseded by the act of 1896, and therefore the former act afforded no valid defence to the appellant's action.

We have had occasion to state in the earlier part of this opinion that the River and Harbor act, and the rules and regulations referred to, have no application to the facts of the case.

We have not been referred to any legislation of congress on the subject-matter embraced in the state statutes, regarding the making of necessary repairs, &c., to drawbridges over navigable waters. The state legislation tends to protect life and property, and we find therein nothing inconsistent with the River and Harbor act and the rules and regulations adopted by the secretary of war.

It appears, in the case *sub judice,* as a conceded fact that the consent of the secretary of war is invariably given when asked for to close bridges when repairs, &c., are necessary, accompanied by the statement that the parties closing the bridges may be responsible in damages for any injury inflicted

upon private interests by such acts. The state, however, to meet the difficulty which the suggestion of liability for damages for injury to private interests from the closing of the draws might entail upon the parties temporarily and necessarily closing the same has pointed out in a statute under what circumstances and within and at which time during the year such repairs, &c., may be made; and further that when the statutory requirements are complied with, the parties necessarily making such repairs, &c., shall not be liable for damages occasioned by obstructing or stopping navigation.

In other words, the statute in effect suspends the remedy existing at common law to recover damages for an injury sustained by a private interest, when the circumstances pointed out by the statute exist and the directions of the statute have been followed. We can see no legally sound objection to this species of legislation, which appears to be largely in the interest of public safety, unless it conflicts with some provision of the constitution of the state or United States, and as no claim has been made that the act is unconstitutional, we have not deemed it necessary to consider its constitutional aspect. It is next urged by the appellant that the act of 1892 was superseded by the act of 1896. This assertion he bases upon a note to section 29 of the act relating to "bridges" (1 *Comp. Stat., p.* 309), which note is, in substance, that previous provisions, similar to those as embraced in section 29 (which section is the act of 1896), contained in the supplement (*Pamph. L.* 1874, *p.* 90, amended by *Pamph. L.* 1891, *p.* 312), which was amended by *Pamph. L.* 1892, *p.* 435, are superseded by that section.

There has been no judicial declaration by the courts of this state to that effect. No such construction can be properly given to the act of 1896, as we shall proceed to demonstrate. It is a fair inference that the reason for the amended act of 1892 was to include the bridged navigable waters of Monmouth county, the only county in this state which had been theretofore excluded from the benefit of the provisions contained in said act, within the statutory regulation. In order to accomplish this, the legislature, under the constitu-

tion of this state, was required to pass an act, general in its terms, which it did. Likewise, as has already been pointed out, the legislature shortened the period of time at and within which parties were entitled to make repairs to bridges, &c., as was previously allotted for that purpose by the statute of 1891. After the passage of the act of 1892, the status of all bridged navigable waters of this state as to the terms under which the time when and the period within which the public authorities, corporation or person repairing or re-building a bridge of the character alluded to were and was permitted to make such repairs, &c., was fixed and determined.

It is a matter of common knowledge that the bridged navigable waters of this state comprised bodies of water upon some of which by reason of the depth of the channel there is considerable traffic all the year, with the exception, maybe, of some of the winter months. It is also a matter of common knowledge that some of these larger bodies of water are used, and capable of being used, for the transportation of ships of large tonnage, whereas the smaller streams are limited in their capacity of transportation and the number, size and character of the boats that can make use of the same. It follows, therefore, that from a maritime standpoint it was important to determine at what season of the year repairs, &c., could be made, with the least interruption to navigation. This the legislature did when it fixed twenty days for that purpose in the month of February of each year. And so the situation remained unchanged until the passage of the act of 1896. Now, it may very well be that during the four years which intervened between the act of 1892 and the act of 1896, it was found that the regulations which applied to bridges over large navigable waters were unsuitable to bridges over shallow streams. That the legislature, at least, thought so is made manifest by the fact that by the act of 1896 the bridged navigable waters of this state were divided into two classes—bridged navigable waters where the channel thereof exceeds four feet six inches at mean high tide, and bridged navigable waters where the channel thereof does not exceed that

measure. The legislature, obviously, had in view that on the smaller bodies of water the traffic was lighter, the boats of less size and tonnage than on the larger bodies of water, and that, therefore, the time for and within which to make repairs, &c., over these lesser bodies could be made more conveniently by the public authorities or parties interested, and with less interruption to navigation, if made at a different season and within a longer period of the year than was prescribed by the act of 1892, indiscriminately, for all bridged navigable waters. This change in time might have been based by the legislature upon general experience that smaller streams were apt to freeze up or be blocked with ice much earlier during the cold season of the year than larger bodies of water, and hence, repairs, &c., to bridges during the months of November and December would interfere but little with navigation, if at all.

Unless we are prepared to say that it was the intention of the legislature to regulate all bridged navigable waters, irrespective of the fact whether or not the depth of the channel of such waters exceeded four feet six inches at mean high tide, we are forced to give the act of 1896 a construction which is palpably absurd.

For, it must be borne in mind that the legislation we are discussing is in the nature of a police regulation of the state, adopted by it for the protection of life and property.

What sound reason, therefore, can there be ascribed to the action of the legislature for abandoning state control of the bridges over navigable waters of this state where the depth of the channel exceeds four feet six inches at mean high tide? Such bridges are subject to become out of repair; the danger to life and loss of property is just as great from a bridge which is out of repair, over a stream where the depth of the channel is four feet seven inches at mean high tide, as from a bridge out of repair over a stream where the depth of the channel is only four feet six inches.

The theory broached by the appellant that the legislative design was to substitute the act of 1896 for the act of 1892, because the act of 1892 was in conflict with the River and Harbor act, is clearly not tenable. For, if the act of 1892 was

in conflict with the federal statute invoked, then the act of 1896 is also in conflict therewith. In respect to the federal statute, and the rules and regulations of the secretary of war, it appears they do not differentiate between bridged navigable waters, where the depth of the channel exceeds four feet six inches at mean high tide and where it does not. But a more conclusive answer to the contention of counsel for appellant that the act of 1892 was repealed by the act of 1896 is to be found in the fact that the act of 1896 does not cover the entire subject legislated upon by the act of 1892. Both statutes are in *pari materia.* By a well-recognized canon of statutory construction, if the act of 1896 is not repugnant to the act of 1892, so that both acts may consistently stand together, then the act of 1892 remains in force. In a note to *Pott. Dwar. Stat.* (*ed.* 1871) 155, the commentator says: "To repeal a statute by implication, there must be such a positive repugnancy between the provisions of the new law and the old that they cannot stand together or be consistently reconciled." See cases cited in note. But if they can be consistently reconciled they will be construed as one act. *Farrell* v. *State,* 54 N. J. L. 421; *Barnaby* v. *Bradley & Currier Co.,* 60 *Id.* 158; *Harrington Sons* v. *Jersey City,* 78 *Id.* 610; *Walker* v. *Freeholders of Essex,* 82 *Id.* 348.

We find no difficulty in reconciling both acts. The only effect that the act of 1896 has on the act of 1892 is to confine the operation of the act of 1892 to bridged navigable waters where the mean high tide exceeds four feet six inches.

The proviso of the act of 1896, in express terms, limits the application of the act of 1896 solely to bridged navigable waters where the mean high tide does not exceed four feet six inches.

We have examined the other matters relied on for a reversal of the judgment and find them to be without merit.

The judgment will be affirmed, with costs.